No. 22-55024

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

Jarron Edmond,
*Plaintiff/Appellee,*

vs.

Kurt Lockwood
*Defendant/Appellant*

On Appeal from the United States District Court
Central District of California No. 2:20-cv-06636-MCS-KS
The Honorable Mark C. Scarsi

## APPELLANT'S OPENING BRIEF

Janine K. Jeffery
REILY & JEFFERY, INC.
5850 Canoga Avenue, Suite 400
Woodland Hills, CA 91367
Tel. (818) 350-6282
Fax (818) 350-6283
*Jjeffery@ReilyJeffery.com*

*Attorneys for Defendant/Appellant Kirk Lockwood*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ....................................................2

STATUTORY AUTHORITIES ..........................................................10

ISSUES PRESENTED........................................................................10

STATEMENT OF THE CASE............................................................11

  A.  Edmond Flees from Los Angeles Police Department Officers Patrolling in A High Crime Area at Night .....................................................................11

  B.  As Plaintiff Begins to Flee, Officers Lockwood and Castanon, Correctly Perceiving that Plaintiff Had a Gun, Run After Him ...........................................13

  C.  Plaintiff Makes a Threatening Gesture and is Shot........................................14

  D.  Plaintiff is Convicted of Being a Felon in Possession of a Gun ....................15

PROCEDURAL HISTORY.................................................................15

SUMMARY OF ARGUMENT ...........................................................18

STANDARD OF REVIEW .................................................................23

ARGUMENT .......................................................................................24

  A.  The District Court Erred in Denying Summary Judgment by Focusing on Factual Disputes That Are Immaterial to The Issue of Qualified Immunity .......24

  B.  Qualified Immunity Shields Law Enforcement Officials from Liability Unless Their Actions Violated a Clearly Established Constitutional Right ........29

i

C. Officer Lockwood Did Not Violate a Clearly Established Right When, during a Running Pursuit, He Shot at an Armed Suspect ....................................32

CONCLUSION ......................................................................................37

STATEMENT OF RELATED CASES ....................................................39

CERTIFICATE OF COMPLIANCE ......................................................40

ADDENDUM OF RELEVANT STATUTORY PROVISIONS ............................41

# TABLE OF AUTHORITIES

## Cases

*Ames v. King Cnty.*,
  846 F.3d 340 (9th Cir. 2017) .................................................................9

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ................................................................... 23, 24

*Baker v. City of Seatac*,
  994 F.Supp.2d 1148 (W.D. Wash. 2014) ...........................................30

*Billingsly v. City of Omaha*,
  277 F.3d 990 (8th Cir. 2002) ...............................................................5

*Bowles v. City of Porterville*,
  571 F. App'x 538 (9th Cir. 2014).......................................................27

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ...........................................................................26

*City and County of San Francisco, Cal. v. Sheehan*,
  575 U.S. ___, 135 S.Ct. 1765 (2015) .......................................... 24, 27

*City of Tahlequah, Oklahoma v. Bond*,
  142 S.Ct. 9 (2021) (*per curiam*) ...................................... 29, 30, 31, 33

*Cook v. Torres*,
  No. 19-cv-01370-PJH, 2021 U.S. Dist. LEXIS 153077,
  at *28 (N.D. Cal. Aug. 13, 2021) .......................................................34

*District of Colombia v. Wesby*,
  583 U.S. at ___, 138 S.Ct. 577 (2018) ...............................................30

*Easley v. City of Riverside*,
  890 F.3d 851 (9th Cir. 2018)....................................................... *passim*

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013) ..................................................................26

*Gonzalez v. City of Los Angeles*,
  2017 U.S. Dist. LEXIS 224067 (C.D. Cal. 2017) ......................................... 17, 35

*Graham v. Connor*,
  490 U.S. 386 (1989) ............................................................... 24, 25, 26

*Hammer v. Gross*,
  932 F.2d 842 (9th Cir. 1991) (*en banc*) ...............................................28

*Heien v. North Carolina*,
  574 U.S. 54 (2014) ..................................................................26

*Hines v. Youseff*,
  914 F.3d 1218 (9th Cir. 2019) ..............................................................34

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ....................................................................3

*Isayeva v. Sacramento Sheriff's Dep't*,
  872 F.3d 938 (9th Cir. 2017) ......................................................... 9, 23

*Kisela v. Hughes*,
  584 U.S. at ___, 138 S.Ct. 1148 (2018) ....................................... 30, 31

*Lamont v. New Jersey*,
  637 F.3d 177 (3d Cir. 2011) ..............................................................5

*Maciariello v. Sumner*,
  973 F.2d 295 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993) .....................30

*Malley v. Briggs*,
  475 U.S. 335 (1986) ..................................................................30

*Menjivar v. City of Los Angeles*,
  2007 U.S. Dist. LEXIS 95928 (C.D. Cal. 2007) ..................................... 17, 35, 36

iv

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) .......................................................................3

*Mueller v. Auker*,
    576 F.3d 979 (9th Cir. 2009) .........................................................4

*Mullenix v. Luna*,
    136 S.Ct. 305 (2015) ....................................................................31

*Nelson v. Weber*,
    No. 3:16-cv-05680-BHS-JRC, 2020 U.S. Dist. LEXIS 94426
    (W.D. Wash. Feb. 13, 2020).......................................................6, 7

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .....................................................................30

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014) ........................................................ 3, 7, 9, 27

*Pride v. Does*,
    997 F.2d 712 (10th Cir. 1993) .......................................................5

*Reese v. Anderson*,
    926 F.2d 494 (5th Cir. 1991) .........................................................6

*Rivas-Villegas v. Cortesluna*,
    142 S.Ct. 4 (2021)................................................................... 31, 32

*Rosenbaum v. Washoe County*,
    663 F.3d 1071 (9th Cir. 2011) .....................................................30

*Ryder v. City of Topeka*,
    814 F.2d 1412, 1419 n. 16 (10th Cir. 1987).............................. 6, 22

*Saucier v. Katz*,
    533 U.S. 194 (2001) ........................................................ 26, 29, 31

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) .....................................................................30

*Scott v. Harris*,
  550 U.S. 372 (2007) ................................................................ 4, 24, 25

*Smith v. City of Hemet*,
  394 F.3d 689 (9th Cir. 2005) (*en banc*) .............................................26

*Szajer v. City of Los Angeles*,
  632 F.3d 607 (9th Cir. 2011) ....................................................... 13, 34

*Tennessee v. Garner*,
  471 U.S. 1 (1985) ......................................................................... *passim*

*Thompson v. Hubbard*,
  257 F.3d 896 (8th Cir. 2001) ......................................................... 5, 22

*Tuuamalemalo v. Greene*,
  946 F.3d 471 (9th Cir. 2019) .......................................................... 9, 34

*United States v. Wilmer*,
  799 F.2d 495 (9th Cir. 1986) ..................................................................7

*Villarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ..............................................................24

*White v. Pauly*,
  580 U.S. 73 (2017) .................................................................... 10, 27

*Wilkinson v. Torres*,
  610 F.3d 546 (9th Cir. 2010) .................................................... 5, 29, 37

*Wilson v. Meeks*,
  52 F.3d 1547 (10th Cir.1995) .................................................................7

*Woodward v. City of Tucson*,
  870 F.3d 1154 (9th Cir. 2017) ..............................................................23

**Statutes**

*28 U.S.C.*
Section 1292 ...............................................................................................3
Section 1331 ...............................................................................................2
Section 1343(a)(4) .......................................................................................2
Section 1367(a) ...........................................................................................3

*42 U.S.C.*
Section 1983 ........................................................................................ 2, 16

*California Penal Code*
Section 29800(a)(1) ...................................................................................15
Section 30305(a)(1) ...................................................................................15

**Rules**

*Federal Rule of Appellate Procedure*
Rule 4(a)(1)(A) ...........................................................................................3

## INTRODUCTION

The dispute in this case lies not in the facts, but in whether the undisputed facts present a situation where Officer Lockwood reasonably believed his life was in danger and thus, whether he is entitled to qualified immunity. Lockwood further submits that the clearly established law at the time of the incident did not provide fair notice that his conduct in this particular situation was unlawful. These are purely legal questions for the court to decide.

The material facts, considered from Lockwood's perspective, demonstrate that Lockwood and his partner had reasonable cause to stop Plaintiff/Appellee Edmond on July 26, 2019 between 9:30 and 10:00 p.m. just outside a park known for gang activity.[1] When Lockwood shined a flashlight on Edmond, Edmond took off running into a dimly lit apartment complex. Based on movements by Edmond just before Edmond began to run, both Lockwood and his partner independently reached the conclusion that Edmond had a gun. As Lockwood and his partner chased Edmond, Lockwood yelled for Edmond to show his hands and get on the ground. Lockwood warned that if Edmond did not stop, Lockwood was going to be shot. Edmond ignored the commands to stop and show his hands. Instead, he

---

[1] Edmond's counsel conceded in oral argument at the motion for summary judgment that there is no allegation that Officer Lockwood improperly stopped Edmond. (ER 9-10) Moreover, Plaintiff was convicted of being a felon in possession of a gun and as such, cannot argue that the officers lacked reasonable cause to stop him. (ER 162-165)

1

continued to run.  It was only when Edmond began to make a clockwise turn toward Lockwood that Lockwood thought he saw a gun in Edmond's left hand and that Edmond was turning toward Lockwood to fire.  While Edmond claims he was not turning, the video evidence supports Lockwood's claim that Edmond was, in fact, turning toward Lockwood.  In the tense, uncertain and rapidly evolving circumstances facing Lockwood, Lockwood had only a split second to determine whether his life was in danger.  He concluded it was and fired four shots; two of which hit Edmond.  One in his right hand and one in his right flank.  In the body worn video, as Edmond is falling, his gun can be heard hitting the pavement.

The District Court erred in denying the motion for summary judgment in that it focused on "disputed facts" which were not material to the outcome, it relied on cases that did not set forth clearly established law, and it ignored a recent Ninth Circuit case, *Easley v. City of Riverside*, 890 F.3d 851, 857 (9th Cir. 2018), which is on a par with the facts in this case and which establishes that Lockwood is entitled to qualified immunity.

## JURISDICTIONAL STATEMENT

Plaintiff brought this action alleging a violation of 42 U.S.C. § 1983, and battery and negligence under California state law.  The District Court had subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and properly exercised its supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367(a).  On December 29, 2021, the District Court issued

its Order denying summary judgment to Appellant Officer Kurt Lockwood.  (ER

40-49)  On January 4, 2021, Lockwood filed his Notice of Appeal.  (ER 191)  The

appeal is timely pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A) and

this Court has jurisdiction pursuant to 28 U.S.C. § 1292.

Because the doctrine of qualified immunity "is an *immunity from suit* rather

than a mere defense to liability... [the Supreme Court has] stressed the importance

of resolving immunity questions at the earliest possible stage in litigation....

Immunity ordinarily should be decided by the court long before trial."  *Hunter v.

Bryant*, 502 U.S. 224, 227-228 (1991) (internal quotation omitted; emphasis in

original).  Accordingly, precisely because the availability of immunity implicates

the defendant's right not to face further litigation and trial, the Supreme Court long

ago recognized that a trial court's denial of qualified immunity is subject to an

interlocutory appeal before a final judgment.  *Mitchell v. Forsyth*, 472 U.S. 511,

529-530 (1985).  The Supreme Court has further reinforced the fact that there must

be an opportunity for pretrial appeal of a denial of qualified immunity because a

defendant's entitlement to qualified immunity "could not be effectively reviewed

on appeal from a final judgment because by that time the immunity from standing

trial will have been irretrievably lost."  *Plumhoff v. Rickard*, 572 U.S. 765, 772

(2014).  Indeed, the "interest protected by the qualified immunity doctrine is so

singularly and sufficiently important that it justifies more than one pretrial appeal by a defendant asserting the same." *Mueller v. Auker*, 576 F.3d 979, 988 (9th Cir. 2009).

For purposes of this interlocutory appeal, Lockwood contends that only one of the "factual issues" identified by the District Court is germane to the qualified immunity analysis and that factual issue is resolved by the video evidence. See *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the district court should have disregarded the non-moving party's version of the facts in light of clear video evidence to the contrary and instead "viewed the facts in the light depicted by the videotape").

The other "factual issues" identified by the District Court miss the point of the qualified immunity analysis. Rather than approaching the analysis from what Officer Lockwood perceived, the District Court declared that the following factual issues existed: 1) whether Edmond was actually holding the gun while running, 2) whether Edmond had the gun in his hand when he was shot, 3) whether any of Lockwood's four shots occurred once Edmond was falling, and 4) whether Edmond actually turned with the intent to shoot Lockwood. (ER 36, 49) Yet, these "factual disputes" are simply not germane to the qualified immunity issue in this case. Rather, qualified immunity can be found to have existed even if Edmond was not holding the gun while running or when shot. That is, the record is

4

reviewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Indeed, "[t]he critical inquiry is what [the officer] perceived." *Id.* at 551. *See also Pride v. Does*, 997 F.2d 712, 717 (10th Cir. 1993) ("The relevant question for the court is not whether [plaintiff] acted in a threatening manner but whether [the officer] reasonably believed so."). As such, whether or not Edmond actually had the gun in his hand while running or at the moment he was shot does not preclude qualified immunity.

Indeed, there are a multitude of cases where qualified immunity has been applied when an unarmed subject took action which was deemed to have caused a reasonable officer to believe that the suspect was actually armed. *See e.g., Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011) (qualified immunity found as to initial shooting where an unarmed subject was shot when troopers "reasonably believed that [suspect] was drawing a gun, not complying with their command that he show his hands"); *Billingsly v. City of Omaha*, 277 F.3d 990, 992 (8th Cir. 2002) (the suspect ran from the officer after being told three times to "halt," and the suspect "moved his arms as though reaching for a weapon at waist level"); *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) (finding officer's conduct reasonable when the suspect was reaching as if to pull out a firearm because "[a]n officer is not constitutionally required to wait until he sets eyes upon

5

the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun"); *Reese v. Anderson*, 926 F.2d 494, 500-01 (5th Cir. 1991) (shooting was reasonable even though suspect was ultimately determined to be unarmed where officers approached the vehicle of a robbery suspect and, after being ordered to show his hands, the suspect reached under his seat multiple times); *Ryder v. City of Topeka*, 814 F.2d 1412, 1419 n. 16 (10th Cir. 1987) (concluding that, because a requirement that a suspect actually have a weapon would place police in "a dangerous and unreasonable situation . . . whether a particular seizure is reasonable is dependent on the 'totality of the circumstances,' and not simply on whether the suspect was actually armed"); *Nelson v. Weber*, No. 3:16-cv-05680-BHS-JRC, 2020 U.S. Dist. LEXIS 94426 (W.D. Wash. Feb. 13, 2020) (qualified immunity found where officer reasonably believed that Plaintiff was reaching for a firearm even though it turned out that suspect was unarmed).

Similarly, contrary to the District Court's statement of relevant factual disputes, whether Lockwood continued to shoot after Plaintiff was falling also does not preclude qualified immunity. The Supreme Court has long recognized: "It stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended. . . . [I]f lethal force is justified, officers are taught to keep

shooting until the threat is over." *Plumhoff v. Rickard*, *supra*, 572 U.S. at 777 (internal citation and quotation marks omitted). Indeed, "[t]he law is clear that where lethal force is justified, shooting an entire magazine over a few seconds is not less reasonable than shooting a few shots." *Nelson v. Weber*, No. 3:16-cv-05680-BHS-JRC, 2020 U.S. Dist. LEXIS 94426, at *27 (W.D. Wash. Feb. 13, 2020). *See also, Easley v. City of Riverside*, 890 F.3d 851, 857 (9th Cir. 2018) (qualified immunity found even though the defendant officer shot Easley "within two to four seconds of the [gun] leaving Easley's hand.").

Moreover, Edmond is bound by the admission of his counsel at oral argument on the motion for summary judgment where he stated "I don't believe that based on the state of the evidentiary record anyone would be able to know which of the four [shots] actually struck him and at what point." (ER 15 at lines 8-14) *United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986) (representation at oral argument is judicial admission).

Finally, the fourth "factual" issue identified by the District Court - whether Edmond intended to shoot Lockwood – also does not preclude qualified immunity. "The inquiry is not into the assailant's state of mind or intentions, but whether, from an objective viewpoint and taking all factors into consideration, the officer reasonably feared for his life." *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir.1995). In *Easley, supra*, 890 F.3d at 857, as Easley was running from the

7

officers, Easley removed a gun from his waistband and threw it in a motion which caused some upper body and shoulder movement. The Ninth Circuit upheld a finding of qualified immunity on the ground that a reasonable officer "may have reasonably feared that Easley had a gun and was turning to shoot" even though the uncontradicted testimony was that Easley was simply trying to dispose of the gun. *Id.* at 857.

Instead of the "factual disputes" identified by the District Court, the District Court should have focused on the following undisputed facts and found qualified immunity: 1) Edmond was in an area at night known for gang activity (ER 107 at 21:13-23; ER 108 at 24:24-25:2); 2) Lockwood had probable cause to believe Edmond had a gun (ER 105 at 13:5-8; ER 119 at 66:7-18; ER 162-165); 3) when Edmond saw the officers, Edmond ran headlong into a poorly lit apartment complex (ER 84 at 39:12-15; ER 117 at 61:13-16; ER 118 at 63:7-8); 4) Edmond was warned that if he did not stop, he would be shot (ER 122; ER 151); 5) Edmond was directed to put his hands up but ignored that direction as well (ER 123 at 82:22-83:5; ER 151); and 6) just before Lockwood fired, Edmond began to turn toward him appearing to have a firearm in his left hand. (ER 120 at 71:20-72:7; ER 151)[2] On these facts, qualified immunity should have been found.

---

[2] A motion to transmit the DVD containing the body worn video of Officers Lockwood and Castanon is being filed concurrently with this brief.

In short, Lockwood's appeal is not based on whether Edmond's evidence is sufficient to raise a genuine issue of fact, but rather whether, even if the genuine factual dispute is resolved in Edmond's favor, Lockwood is entitled to qualified immunity *as a matter of law*:

> Where the district court has determined the parties' evidence presents genuine issues of material fact, such determinations are not reviewable on interlocutory appeal. [Citation.] However, we may adjudicate "legal" interlocutory appeals; that is, we may properly review a denial of qualified immunity where a defendant argues - as the deputies argue here - that the facts, even when considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law.

*Ames v. King Cnty.*, 846 F.3d 340, 347 (9th Cir. 2017); *see also Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938 (9th Cir. 2017) ("the existence of a genuine dispute about the reasonableness of an officer's use of force does not preclude granting qualified immunity or eliminate any basis for an immediate appeal of denial of qualified immunity."); *Tuuamalemalo v. Greene*, 946 F.3d 471, 476 (9th Cir. 2019) ("We have jurisdiction under *Plumhoff v. Rickard*... to review the decision of the district court, viewing the facts in the light most favorable to [plaintiff], the nonmoving party.")

Moreover, Lockwood has an even more substantial claim for entitlement to qualified immunity under the "clearly established law" prong of the analysis. Again, even assuming that the use of deadly force under the circumstances was

excessive, the District Court erred in holding that Edmond met his burden to show that the law was clearly established. In addressing the "clearly established law" prong of the qualified immunity analysis, the District Court's order denying summary judgment cited *Tennessee v. Garner*, 471 U.S. 1 (1985) ("*Garner*") and two unpublished District Court decisions. (ER 40-49) The District Court erroneously accepted *Garner* as "clearly established law" even though it was at too high a level of generality. Indeed, as confirmed in *White v. Pauly*, 580 U.S. 73, 80 (2017), "*Garner* and *Graham* [*v. Connor*] do not by themselves create clearly established law outside 'an obvious case.'" Similarly, the District Court's reliance on unpublished cases as establishing "clearly established law" was error. This is a purely legal issue, a paradigmatic example of an appropriate basis for interlocutory appeal of denial of qualified immunity.

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.

## ISSUES PRESENTED

1.      Whether the District Court erred in denying summary judgment by focusing on factual disputes that are immaterial to the issue of qualified immunity and not considering the totality of the circumstances facing Lockwood at the time of the shooting, including the fact that Edmond had a gun, Edmond was fleeing from the officers, it was night time, Edmond disregarded orders to stop and show

his hands, Edmond was warned that he would be shot if he did not stop, and

Edmond turned toward Lockwood with what Lockwood believed was a gun,

leaving Lockwood only a split second to decide whether his life was in danger.

2.      Whether Officer Lockwood had fair notice at the time of the

incident that the right alleged to have been violated was clearly established such

that a reasonable officer under the same circumstances would have understood that

his conduct was unlawful.

## STATEMENT OF THE CASE

The following facts are either undisputed or are stated in the light most

favorable to the Plaintiff:

### A.      Edmond Flees from Los Angeles Police Department Officers Patrolling in A High Crime Area at Night

On July 26, 2019, City of Los Angeles police officers Kurt Lockwood and

Andrew Castanon drove to Vermont Square Park (the "Park"), a high-crime area

notorious for Rollin 40's Crips gang activity.  (ER 107 at 21:13-23)  Between 9:30

and 10:00 p.m., Officers Lockwood and Castanon noticed that there was a large

crowd in the Park.  (ER 108 at 24:24-25: 2)  While it was not uncommon to see

groups of approximately 20-30 people congregating and drinking in the Park, on

July 26, 2019, Lockwood observed a crowd of at least 60 people in the Park.  (ER

108 at 24:13-16)  Several of the people were observed drinking alcoholic

11

beverages.  (ER 110 at 31:14-18)

Based on the size of the crowd and the time of night, Officers Lockwood and Castanon decided to leave their patrol car and enter the Park.  (ER 108 at 24:4-10; ER 14 at ¶¶ 5-6)  Both officers were in full uniform.  (ER 110 at 30:11-13) Initially, Lockwood's attention was drawn to a man in a white tank top who started to walk away from the larger group.  (ER 113 at 45:12-14; ER 142 at ¶ 8) Lockwood drew Castanon's attention to the man in the tank top because it initially appeared the man may have been attempting to evade contact with the police.  (ER 142 at ¶ 9)  As the officers approached the man, however, Lockwood did not see anything suspicious, so he and his partner continued to walk past.  (*Id.* at ¶ 10)

Within seconds of passing the man in the tank top, Lockwood observed Edmond and another man look at Lockwood and his partner and begin walking away from the Park towards Budlong Avenue.  (ER 111 at 37:10-20; ER 151)  It appeared to Lockwood that Edmond and the other man were attempting to evade contact with the police officers.  (ER 116-117 at 57:18-58:18)  The "totality" of these circumstances (the evasive conduct, being in a park known for crime and gang activity at night) raised Officer Lockwood's suspicions.  (ER 117 at 58:13-18)  After alerting Castanon to the presence of Edmond and the other man, Lockwood jogged toward Budlong Avenue to get a better view of what they were doing.  (ER 117 at 58:22-59:5)

12

As Lockwood came upon Edmond, Lockwood used his flashlight to illuminate Edmond and the other man, who were near a gate to an apartment complex adjacent to the Park. (ER 117 at 61:3-8) Once Lockwood illuminated the two men, Edmond immediately began to run into the apartment complex. (ER 84 at 39:12-15; ER 117 at 61:13-16; ER 118 at 63:7-8; ER 151)

## B. As Plaintiff Begins to Flee, Officers Lockwood and Castanon, Correctly Perceiving that Plaintiff Had a Gun, Run After Him

As Edmond began to run, he was grabbing at his front pocket which appeared to have a heavy object in it. (ER 117 at 61:13-62:1; ER 119 at 66:13-19) Edmond admits to having a gun in his pocket. (ER 84 at 38:2-4) Consistent with Edmond's admission, it looked to Officer Lockwood, based on his 12 years of law enforcement experience, as if Edmond had a gun. (ER 105 at 13:5-8; ER 119 at 66:7-18)[3] Officer Castanon also perceived that Edmond had a gun as when the chase started, without any direction from Lockwood, Castanon urgently broadcast over his hand-held police radio "Let me get backup! Man with a gun!" (ER 121 at 77:6-16; ER 152)

As Edmond ran through the apartment complex, Officer Lockwood ran after

---

[3] As explained *infra*, Plaintiff cannot challenge the validity of the initial stop because to do so would invalidate his conviction for being a felon in possession of a gun. *See e.g., Szajer v. City of Los Angeles*, 632 F.3d 607, 609-11 (9th Cir. 2011). Further, Plaintiff conceded in oral argument that he was not challenging the constitutionality of the initial stop. (ER 9-10)

him. (ER 121 at 76:17-25; ER 151) In addition to being concerned that Edmond had a gun and was running away, Lockwood was concerned that Edmond would go into an unsuspecting person's apartment. (ER 119 at 68:13-20) During this chase, Lockwood shouted at Edmond: "Let me see your fucking hands" and "get on the ground or I'm going to shoot you." (ER 122) Despite these directions, Edmond continued to run and only fleetingly raised his hands above his head before putting his arms back down. (ER 123 at 82:22-83:5; ER 151)

### C. Plaintiff Makes a Threatening Gesture and is Shot

As Officer Lockwood ran after the fleeing Edmond, Edmond came upon a walkway perpendicular to the one he was on and began to turn onto it. (ER 143 at ¶ 25; ER 151) Just before the shots were fired, Edmond was turning back toward Lockwood when Lockwood believed he observed a gun in Edmond's hand coming around in a clockwise direction. (ER 120 at 71:20-72:7)[4] Lockwood then fired four times in quick succession. (ER 120 at 70:6-71:6; ER 151) Lockwood stopped firing when Edmond was no longer a threat. (ER 125 at 92:14-15) As Edmond fell, a gun hit the ground. (ER 73; ER 144 at ¶ 30; ER 151)

As the officers prepared to search Edmond's person, Edmond shouted "I

---

[4] For purposes of this appeal, Lockwood accepts the District Court's determination that there is a genuine dispute of fact as to whether Edmond actually had the gun in his hand at this moment in time but as demonstrated that inquiry does not preclude qualified immunity.

don't have nothing man." (ER 151) When Castanon pointed at the gun on the ground and said, "Just that one pistol," Edmond responded, "That's that other dude's I was with." (ER 151; ER 152) Edmond was transported to the hospital where he was treated for two gunshot wounds; one to his right hand and one to his right flank. (ER 85 at 42:2-16)

### D. Plaintiff is Convicted of Being a Felon in Possession of a Gun

On July 30, 2019, as a result of this incident, a criminal complaint was filed charging Edmond with a violation of California Penal Code § 29800(a)(1) - felon in possession of a firearm, a felony, and California Penal Code § 30305(a)(1) - felon in possession of ammunition, a felony. (ER 162-165) On January 29, 2020, with the approval of the court, Edmond pled nolo contendere to violating California Penal Code § 29800(a)(1). (*Id.*)

## PROCEDURAL HISTORY

On July 24, 2020, Edmond filed his Complaint in the District Court for the Central District of California, naming as Defendants the City of Los Angeles and Officer Lockwood. (ER 179-190)[5] On November 4, 2020, Lockwood filed his answer, denying Edmond's allegations and alleging various affirmative defenses including qualified immunity. (ER 169-178)

---

[5] On November 10, 2021, the Court issued an Order dismissing the City as a defendant, with prejudice, pursuant to a stipulation of the parties. (ECF # 59)

The Complaint alleged three claims for relief: (1) violation of 42 U.S.C. § 1983 – Based on Unreasonable Use of Deadly Force; (2) battery under state law; and (3) negligence under state law. (ER 179-190) At oral argument, counsel for Edmond acknowledged that the causes of action are based solely on excessive force and that there is no allegation that Edmond was improperly stopped. (ER 9-10)

On September 13, 2021, Lockwood initially filed his Motion for Summary Judgment/Partial Summary Judgment. (ECF # 39) Based on a procedural error, on September 23, 2021, the District Court denied the motion without prejudice to refiling within 14 days. (ECF # 45) On September 29, 2021, Lockwood re-filed his Amended Motion for Summary Judgment/Partial Summary Judgment. (ECF # 48) On October 8 and October 9, 2021, Edmond filed his Opposition to the Motion for Summary Judgment/Partial Summary Judgment. (ECF ## 51-53) On October 25, 2021, Lockwood filed his Reply. (ECF # 56) On October 27, 2021, Lockwood filed a Notice of Errata and a Corrected Reply. (ECF # 57)

The motion for summary judgment was heard on November 15, 2021. (ER 7) Following the hearing, the District Court denied the motion. (ER 40-49) With respect to the first prong of the qualified immunity issue, the Court determined that there is a genuine dispute as to "(1) whether Edmond reached into his pants pocket or was holding the gun while running; (2) whether he had the gun in hand when he

16

was shot or whether it simply fell out of his pockets once he had already been shot; (3) whether Lockwood continued shooting at Edmond once he was already falling and no longer in flight; and (4) whether it looked as though Edmond was turning toward Lockwood with the gun at the time Lockwood shot him." (ER 46)

With respect to the first part of the second prong of the qualified immunity test, the District Court found that *if* the jury finds, based on the body camera footage and other evidence, that Edmond did not reach for or hold a weapon during the pursuit *and* did not turn to shoot Lockwood, *and* Lockwood did not reasonably perceive that he did so," then a reasonable officer could not have believed use of deadly force was lawful. (Emphasis added.) (ER 46, 49)

In addressing the second prong of qualified immunity, Edmond cited *Garner*, *supra*, 471 U.S. at 1, for the broad general proposition that an officer may not categorically use deadly force against a fleeing suspect, but may only use deadly force if reasonable under the circumstances. Edmond also cited two unpublished District Court decisions – *Gonzalez v. City of Los Angeles*, 2017 U.S. Dist. LEXIS 224067 (C.D. Cal. 2017), and *Menjivar v. City of Los Angeles*, 2007 U.S. Dist. LEXIS 95928 (C.D. Cal. 2007), claiming that they are factually similar and provided "clear" notice to Lockwood that his conduct vis-à-vis Edmond was unconstitutional.

At the hearing on the motion for summary judgment, Lockwood's counsel

argued that the totality of the evidence, including that Edmond had a gun and made a turning movement toward Lockwood during the chase, as shown in the video, justified qualified immunity. He also argued that the *Garner* decision was pitched at too high a level of generality and was too factually dissimilar to constitute "clearly established" law under the circumstances of this case. Lockwood's counsel also argued that unpublished decisions cannot constitute "clearly established" law. (ER 7-34) The District Court took the matter under submission. (*Id*. at 34)

On December 29, 2021, the District Court issued its Order denying the motion. (ER 40-49) On January 4, 2022, Lockwood filed his Notice of Appeal of the Order. (ER 191)

On January 7, 2022, Edmond filed an *ex parte* application to certify the appeal as frivolous. (ECF # 103) On January 7, 2022, Lockwood filed an opposition to the *ex parte* application. (ECF # 104) On January 13, 2022, the District Court issued its Order denying the *ex parte* application, and staying the case until resolution of this appeal. (ECF # 107)

## SUMMARY OF ARGUMENT

Instead of analyzing the totality of circumstances, including taking into account the split-second in which Officer Lockwood had to react to what appeared to be a life-threatening situation, and instead of acknowledging that the law does

18

not require an officer to see the muzzle of a gun before concluding that force is necessary, the District Court denied Lockwood's request for qualified immunity. Yet, factual context is critical both in assessing whether a use of force was reasonable, and in determining whether a constitutional violation was "clearly established" for purposes of qualified immunity. Compounding the error, the District Court focused on factual issues which did not preclude qualified immunity.

The factual context of the case before this Court compels a finding of qualified immunity. Edmond was in a park area known for gang activity at night. (ER 107-108) Officers Castanon and Lockwood were in full uniform. (ER 110 at 30:11-13) Upon seeing the officers, Edmond immediately left the Park. (ER 111 at 37:10-20) When Officer Lockwood shined the flashlight on Edmond, Edmond immediately ran into a dimly lit apartment complex. (ER 84 at 39:12-15; ER 117 at 6:13-16; ER 118 at 63:7-8; ER 151; ER 152) Before fleeing, Edmond slipped and clutched his pocket in such a way that caused two experienced police officers to believe that he had a gun. (ER 105 at 13:5-8; ER 119 at 66:7-18; ER 151) They were correct. (ER 96 at 88:3-7; ER 97 at 90:22-24; ER 162-165) Both officers gave chase. (ER 151; ER 152) Edmond was warned that if he did not get down, he would be shot. (ER 151) Edmond was ordered to show his hands but he only briefly complied with this command before putting his hands down by his sides again. (ER 123 at 82:22-83:5; ER 151) Just before the shots were fired, Edmond

19

was turning back toward Lockwood in a clockwise gesture with his left hand raised with what Lockwood believed was a gun. (ER 120 at 70:6-71:6; ER 151) In the split second in which Lockwood had to interpret Edmond's actions, Lockwood concluded that Edmond had a gun in his left hand and was turning toward Lockwood to shoot him. (ER 120 at 72:8-13; ER 151) The following photographs are still shots taken from ER 151, Lockwood's body worn video, just before the first shot was fired:













In fear for his life, Lockwood fired four times in quick succession. (ER 120 at 70:6-71:6; ER 151) Lockwood stopped firing when Edmond was no longer a threat. (ER 125 at 92:14-15) As Edmond fell, his gun hit the ground. (ER 151) Two of the bullets struck Edmond; one to his right hand and one to his right flank. (ER 85 at 42:2-16)

This is the quintessential case warranting a finding of qualified immunity, i.e., a man with a gun fleeing into a poorly lit apartment complex at night in an area known for gang activity, warned that if he did not show his hands and get down, he would be shot and despite such warnings, makes a movement indicating that he is turning toward the officer in a manner suggesting that he was going to fire his weapon. The Constitution does not require that an officer must wait until a suspect shoots at him before he can defend himself. *See e.g., Ryder v. City of Topeka*, *supra*, 814 F.2d at 1419 n. 16; *Thompson v. Hubbard*, *supra*, 257 F.3d at 899 ("[a]n officer is not constitutionally required to wait until he sets eyes upon the

weapon.").

Moreover, on the second prong of the qualified immunity test, the only case that Edmond cited as constituting clearly established law was too general and not on point while the remaining two unpublished decisions upon which Edmond relied cannot be considered in determining what constitutes "clearly established" law. Rather the case of *Easley* provides a far more comparable analysis and should have resulted in a finding of qualified immunity.

## STANDARD OF REVIEW

The issues raised in this appeal, namely the propriety of the District Court's denial of qualified immunity under both prongs of the inquiry, are reviewable on appeal because Lockwood made a timely motion for summary judgment arguing for the applicability of qualified immunity under both prongs, which the District Court denied on December 29, 2021. (ER 40-49) A timely Notice of Appeal was filed. (ER 191)

The District Court's conclusions regarding qualified immunity are reviewed under a *de novo* standard of review. *Isayeva v. Sacramento Sheriff's Dept't.*, 872 F.3d 938, 946 (9th Cir. 2017). Generally, the facts must be viewed in the light most favorable to the non-moving party. *Woodward v. City of Tucson*, 870 F.3d 1154, 1159 (9th Cir. 2017). The "evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*,

23

477 U.S. 242, 255 (1986) (emphasis added). A court, however, "need not draw all possible inferences in [the nonmoving party's] favor, but only all *reasonable* ones." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 fn. 10 (9th Cir. 2002) (emphasis in original).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise property supported motion for summary judgment; the requirement is that there be no *genuine* issue of *materia*l fact"—*i.e.,* a fact that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (emphasis in original).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, *supra*, 550 U.S. at 380 (facts should be construed in the light established by objective video evidence).

## ARGUMENT

### A. The District Court Erred in Denying Summary Judgment by Focusing on Factual Disputes That Are Immaterial to The Issue of Qualified Immunity

The question in excessive force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490

24

U.S. 386, 397 (1989) ("*Graham*"). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. This calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. Put another way, "[t]he Constitution is not blind to 'the fact that police officers are often forced to make split-second judgments.'" *City and County of San Francisco, Cal. v. Sheehan*, 575 U.S. ___, 135 S.Ct. 1765, 1775 (2015) ("*Sheehan*").

This *Graham* reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, *supra*, 490 U.S. at 396. In *Garner, supra,* 471 U.S. at 3, 12, the Supreme Court also considered (1) the immediacy of the threat, (2) whether the force was necessary to safeguard officers or the public, and (3) whether officers administered a warning, assuming it was practicable. None of the factors, however, "establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" *Scott v. Harris*, *supra*, 550 U.S. at 382. Rather, in every situation, the Court must consider all of the

factors relevant to that specific circumstance.

Significantly, there is room in this analysis for what may turn out in hindsight to be a miscalculation: "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 204-05 (2001). *See also, Heien v. North Carolina*, 574 U.S. 54, 61 (2014) ("The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others. . . . This is true even when, judged with the benefit of hindsight, the officers may have made 'some mistakes.'")

The safety threat posed by a suspect is the "most important" of the *Graham* factors. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (*en banc*). "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004). As recognized in *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013), "If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." Further, the Ninth Circuit has found that darkness is a factor to consider when evaluating the reasonableness of an officers' conduct.

*Bowles v. City of Porterville,* 571 F. App'x 538, 540 (9th Cir. 2014).

Similar to the facts that faced Lockwood, the facts facing the officer in *Easley* caused the Court to find qualified immunity. 890 F.3d at 851. There, Easley indisputably had a gun in his possession during a foot pursuit. He tossed the gun away in a motion that caused some twisting motion of his upper body. *Id*. at 857. Even though the officer started firing 2-4 seconds after the toss, the Ninth Circuit affirmed the reasonableness of the shooting, because "a reasonable officer may have reasonably feared that Easley had a gun and was turning to shoot him." *Id*. Here, Lockwood reasonably believed that Edmond had a gun. (ER 105 at 13:5-8 and ER 119 at 66:7-18) Further, body worn the video demonstrates that Edmond was turning toward Lockwood with what Lockwood believed was a gun. (ER 151)

The Supreme Court has recently granted qualified immunity in several cases where officers shot at suspects who appeared poised to use a deadly weapon. *See, e.g., Plumhoff v. Rickard*, *supra,* 572 U.S. at 779 ("it was not clearly established that it was unconstitutional to shoot a fleeing driver to protect those whom his flight might endanger"); *see also White v. Pauly*, 580 U.S. 73 (2017) (reversing denial of qualified immunity where officer shot suspect who was pointing a gun in the officer's direction without first warning suspect to drop the gun); *Sheehan*, *supra*, 575 U.S. at 613 ("Nothing in the Fourth Amendment barred [officers] from

protecting themselves, even though it meant firing multiple rounds").

Even if an officer is found to have used unreasonable force, a denial of qualified immunity does not necessarily follow. This Court has rejected the notion that for qualified immunity purposes, "an officer who has used unreasonable force cannot, by definition, have acted reasonably." *Hammer v. Gross*, 932 F.2d 842, 850 (9th Cir. 1991) (*en banc*). To collapse the questions whether force was unreasonable and whether an officer could have believed it was reasonable "would be to eliminate all possibility of immunity for violations of the Fourth Amendment, an unacceptable outcome." *Id.*

In this case, it is undisputed that Edmond was armed. (ER 162-165) It is undisputed that both Lockwood and Castanon believed that Edmond was armed. (ER 117 at 61:13-62:1; ER 119 at 66:13-19; ER 121 at 77:6-16; ER 151; ER 152) It is undisputed that Edmond fled from the officers. (ER 151; ER 152) It is undisputed that it was dark. (ER 108 at 24:24-25:2) It is undisputed that Edmond ignored Lockwood's orders to get down. (ER 151; ER 152) It is undisputed that Edmond ignored the order to show his hands. (*Id.*) It is undisputed that Lockwood warned Edmond that he would shoot. (ER 151) Further, when combined with Lockwood's testimony, the video evidence conclusively demonstrates that Edmond turned toward Lockwood with what appeared to be a gun in his hand. (ER 120 at 70:6-71:6; ER 151) Lockwood had a split second to decide whether his life was in

28

danger. "The critical inquiry is what [the officer] perceived." *Wilkinson v. Torres*, *supra*, 610 F.3d at 551. Lockwood perceived that his life was in danger and as such, fired his weapon. (ER 143 at ¶ 27)

To deny Lockwood qualified immunity under these circumstances stands the entire concept of qualified immunity on its head. Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9, 11 (2021) (*per curiam*) ("*Bond*"). It is intended to protect officers who have to make split second decisions in dangerous circumstances from having their actions judged with 20/20 hindsight. And, it is intended to protect officers from liability who may have made a mistake under tense, rapidly evolving potentially life-threatening situations. *Saucier*, *supra,* 533 U.S. at 204-05.

In light of those dictates, it is clear that not every reasonable officer running after an armed suspect would have recognized as unconstitutional his necessarily split-second assessment that the suspect presents an immediate threat requiring self-defense. As such, Lockwood's motion for summary judgment should be granted.

### B. Qualified Immunity Shields Law Enforcement Officials from Liability Unless Their Actions Violated a Clearly Established Constitutional Right

The doctrine of qualified immunity shields government officials from

29

liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted). Qualified immunity is not afforded out of some special solicitude for the interests of law enforcement officers over those of citizenry at large. The purpose of this doctrine is to allow officers to perform their duties with vigor rather than with timidity. *See Scheuer v. Rhodes*, 416 U.S. 232, 240-41 (1974). Indeed, an officer's vigorous pursuit of his duties greatly furthers the interests of the people. The purpose of qualified immunity is to ensure that the officers are given fair notice of the law that they are required to uphold. *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011). In defining this objective standard and the public policy interest justifying its use, the Court in *Malley v. Briggs*, 475 U.S. 335, 341 (1986), stated that qualified immunity was designed to protect "all but the plainly incompetent or those who knowingly violate the law." This principal has been repeatedly reaffirmed by the Supreme Court. *See e.g., Bond*, 142 S.Ct. at 11; *Kisela v. Hughes*, 584 U.S. at ___, 138 S.Ct. 1148, 1152 (2018); *District of Colombia v. Wesby*, 583 U.S. at ___, 138 S.Ct. 577, 589 (2018). In short, officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Baker v. City of Seatac*, 994 F.Supp.2d 1148, 1167 (W.D. Wash. 2014) quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S.

30

1080 (1993).

Significantly, the Supreme Court has instructed courts to consider whether the law is clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quotation marks omitted). Two recent decisions from the Supreme Court have clarified what it means for a right to be "clearly established." *See Bond, supra,* 142 S.Ct. at 9 and *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4 (2021) (*Cortesluna*). Both cases emphasize long standing precedent that clearly established law cannot be defined at too "high [a] level of generality." *Bond*, 142 S.Ct. at 11; *Cortesluna*, 142 S.Ct. at 7. "It is not enough that a rule be suggested by then-existing precedent; the 'rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Bond,* 142 S.Ct. at 10 quoting *Saucier, supra,* 533 U.S. at 202 (internal quotations omitted).

Moreover, Fourth Amendment cases, like this one, call for an even more particularized analysis:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela v. Hughes*, *supra*, 138

S.Ct. at 1152.

To meet his burden to show a violation of clearly established law, a plaintiff "must identify a case that put [Defendant] on notice that his specific conduct was unlawful." *Cortesluna*, 142 S.Ct. at 8.  Moreover, the *Cortesluna* Court, 142 S. Ct. at 8, has implied that "clearly established law" is set at the level of the Supreme Court:

> Neither [Plaintiff] nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here. Instead, the Court of Appeals relied solely on its precedent in LaLonde. *Even assuming that Circuit precedent can clearly establish law for purposes of §1983*, LaLonde is materially distinguishable and thus does not govern the facts of this case.  (Emphasis supplied.)

### C.     Officer Lockwood Did Not Violate a Clearly Established Right When, during a Running Pursuit, He Shot at an Armed Suspect

The evidence, viewed in the light most favorable to Edmond, is as follows: After Edmond saw fully uniformed officers in an area known for gang activity, he immediately began leaving the Park.  (ER 111at 37:10-20; ER 151)  It was night time.  (ER 108: at 22:24-25:2)  When Lockwood shined the flashlight on Edmond, Edmond immediately fled into a dimly lit apartment complex.  (ER 117 at 61:3-16; ER 151)  Just before doing so, Edmond slipped and clutched his pocket in such a way that the two experienced police officers, Lockwood and Castanon, believed that Edmond had a gun.  (ER 105 at 13:5-8; ER 117 at 61:13-62:1; ER 119 at 66:18-19)  They were correct.  (ER 84 at 38:2-4)  Both officers gave chase.

(ER 151; ER 152)  Edmond ignored an order to get down and a warning that if he did not do so, Lockwood would shoot.  (ER 122 at 13-21; ER 151)  Edmond also ignored orders to put his hands up.  (ER 151; ER 152)  Lockwood testified that he fired his weapon in self-defense because he perceived Edmond to be turning back toward Lockwood with a firearm in his left hand.  (ER 120 at 72:8-13)  Edmond testified that he never had the gun in his hand but that the gun fell out of his pocket when he was struck with the bullets.  (ER 86 at 45:4-18)  The video evidence is consistent with Lockwood's testimony.  (ER 151)  Lockwood fired four times in quick succession.  (ER 120 at 70:6-71:6)  Lockwood stopped firing when Edmond was no longer a threat.  (ER 125 at 92:14-15)  The body worn video shows that as Edmond fell, his gun hit the ground.  (ER 151).

The burden was on Edmond to identify sufficiently specific prior case law that would have put Lockwood on notice that his specific conduct was unlawful. *Bond*, 142 S.Ct. at 10.  He failed to do so.  Rather, the District Court was directed to *Garner*, and two unpublished decisions.  Yet, *Garner* presented a completely different set of facts than that presented in this case.  That is, in *Garner*, the officer shot a fleeing burglary suspect who he did **not** believe was armed.  The officer specifically testified that "[h]e saw no sign of a weapon, and, though not certain, was 'reasonably sure' and 'figured' that *Garner* was unarmed."  471 U.S. at 3.

33

In the case before this Court, because Edmond was convicted of being a felon in possession of a firearm, the officers, as a matter of law, had probable cause to believe that Edmond was armed. That is, if Edmond had been arrested without probable cause, the gun conviction would be invalid. *See e.g., Szajer v. City of Los Angeles*, *supra*, 632 F.3d at 611-612 (the claims for illegal search and seizure were barred by *Heck* [*v. Humphrey*] because the plaintiffs were essentially challenging the search and seizure of the same evidence upon which the criminal charges and convictions were based.); *Cook v. Torres*, No. 19-cv-01370-PJH, 2021 U.S. Dist. LEXIS 153077, at *28 (N.D. Cal. Aug. 13, 2021) (Plaintiff challenged the lawfulness of the search of his person that led to the seizure of the body armor and heroin and the discovery that he had failed to register as a sex offender. While plaintiff only pled no-contest to possessing the body armor, all three discoveries arose from the same search, and a finding that the search that resulted in the discovery of the heroin or sex offender information was invalid would call into question the body armor plea.)

With regard to the unpublished decisions relied upon by the District Court to establish "clearly established law," as the Ninth Circuit explained, "[t]he right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, *supra*, 946 F.3d at 477. *See also Hines v. Youseff*, 914 F.3d 1218,

34

1229-30 (9th Cir. 2019) (rejecting plaintiffs' reliance on unpublished appellate and district court decisions to demonstrate the existence of clearly established law because "memorandum dispositions do not establish law" and although "unpublished district court decisions may inform our qualified immunity analysis . . . it will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only") (quotations omitted).

Moreover, the unpublished cases cited by Edmond are inapposite. In *Gonzalez v. County of Los Angeles*, *supra*, 2017 U.S. Dist. LEXIS 224067, deputies claimed that the decedent began to run when the deputies attempted to stop him, and that the decedent used both hands to fumble with a gun to point it at them. *Id*. at *15. However, the plaintiffs raised a genuine dispute as to whether the decedent in fact pointed a gun or was merely running away without stopping. *Id*. Here, Plaintiff was not merely running away without stopping - the video establishes that Officer Lockwood did not shoot while Edmond was merely in headlong flight; it was only when Edmond made his threatening movement, turning toward Officer Lockwood, that Officer Lockwood fired his weapon.

*Menjivar v. City of Los Angeles*, *supra,* 2007 U.S. Dist. LEXIS 95928, is similarly inapposite. In that case, after a foot pursuit, the officer asserted that the suspect turned and pointed a gun at the officer, at which point the officer started to

fire. *Id.* at *2. An eyewitness security guard monitoring through a security camera said he did not see the suspect turn toward the officers, or point his hand to the officers, and could not tell if the suspect had a gun in his hand. *Id*. at *9-11. The plaintiffs' expert also testified that a gun retrieved 20 feet away was unlikely to have slid so far on its own, raising an inference that the gun was planted to cover up the shooting. *Id*. at *11-12. Based on the security guard's and expert's testimony, the court held that a jury could reasonably find that the suspect never turned and never had a gun. *Id*. at 28-29. Here, of course, Edmond undisputedly had a gun - he was convicted of its unlawful possession - and the video evidence undisputedly shows Plaintiff began to turn toward Officer Lockwood with what appeared to be a gun in his hand. (ER 151; ER 162-166)

The case before this Court is more like *Easley*. In *Easley*, *supra,* as the plaintiff fled from a traffic stop, an officer shouted "gun." *Id*. at 857. The shooting officer saw Easley grab his waistband as he ran away and it was undisputed that, as he ran, Easley grabbed an object from his pants pocket with his left hand and threw it away from his body in a frisbee-throwing motion involving "some upper body or shoulder movement." *Id*. The officer fired 2-4 seconds after the toss. *Id*. The Ninth Circuit held, "Based on these undisputed facts, a reasonable officer may have reasonably feared that Easley had a gun and was turning to shoot him." *Id*. The Ninth Circuit held that the officer's "application of

36

deadly force was a proportional response because 'the Fourth Amendment does not require' a police officer to be 'omniscien[t], and absolute certainty of harm need not precede [an officer's] act of self-protection.'" *Id*. (Quoting *Wilkinson v. Torres*, *supra*, 610 F.3d at 553.)

The facts of this case are at least as compelling as those in *Easley*. The incident took place in an area known for gang activity. It was night time. When Lockwood shined the flashlight on Edmond, Edmond immediately began running. The apartment complex into which Edmond ran was dimly lit. Edmond refused to comply with orders to show his hands and get on the ground despite being warned that he would be shot. Lockwood and Castanon believed that Edmond was armed. The entire chase lasted ten seconds. And in the split-second leading up to shooting, as he saw Edmond begin to turn, Lockwood had to decide if Edmond intended to shoot him. Lockwood concluded that Edmond was going to shoot him and fired his own weapon. This is precisely the type of situation, just as in *Easley*, which warrants application of the doctrine of qualified immunity.

## CONCLUSION

While Lockwood may or may not have been correct in concluding that his life was in danger, the doctrine of qualified immunity is intended to protect officers who face the type of situation faced by Lockwood. That is, he had to make a split-second decision in a tense, rapidly evolving dangerous situation. The District

37

Court did not take into account the perceptions of Lockwood but rather focused on details that are immaterial to the analysis in this case. Further, no case of clearly established law was presented by Edmond which constituted the type of clearly established law that would put Lockwood on notice that his conduct under the circumstance was unconstitutional. For these reasons, this Court should reverse the district Court's decision and remand the case with instructions to the District Court to enter judgment in favor of Lockwood on the issue of qualified immunity.

Dated: July 18, 2022                    REILY & JEFFERY, INC.


                                        */s/ Janine K. Jeffery*
                                        Janine K. Jeffery
                                        *Attorney for Appellant Kurt Lockwood*

38

## STATEMENT OF RELATED CASES

The undersigned attorney states the following:

Pursuant to Ninth Circuit Rule 28-2.6, I am unaware of any related cases currently pending in this court.


Dated: July 18, 2022                    REILY & JEFFERY, INC.


                                        */s/ Janine K. Jeffery*
                                        Janine K. Jeffery
                                        *Attorney for Appellant Kurt Lockwood*

## CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party.

**This brief contains 9,666 words,** excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.


Dated:  July 18, 2022                         REILY & JEFFERY, INC.


                                              */s/ Janine K. Jeffery*
                                              Janine K. Jeffery
                                              *Attorney for Appellant Kurt Lockwood*

## ADDENDUM OF RELEVANT STATUTORY PROVISIONS

**Fourth Amendment to the United States Constitution**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.S. § 1983 (LexisNexis, Lexis Advance through Public Law 117-159, approved June 25, 2022)

## § 29800. Person convicted of felony owning, purchasing, receiving or possessing firearm

**(a)**

**(1)** Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is

41

addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

**(2)** Any person who has two or more convictions for violating paragraph (2) of subdivision (a) of Section 417 and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

**(3)** Any person who has an outstanding warrant for any offense listed in this subdivision and who has knowledge of the outstanding warrant, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

**(b)** Notwithstanding subdivision (a), any person who has been convicted of a felony or of an offense enumerated in Section 23515, when that conviction results from certification by the juvenile court for prosecution as an adult in an adult court under Section 707 of the Welfare and Institutions Code, and who owns or has in possession or under custody or control any firearm is guilty of a felony.

**(c)** Subdivision (a) shall not apply to a conviction or warrant for a felony under the laws of the United States unless either of the following criteria, as applicable, is satisfied:

**(1)** Conviction of a like offense under California law can only result in imposition of felony punishment.

**(2)** The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both punishments.


Cal. Penal Code § 29800 (Deering, Lexis Advance through Chapter 27 with the exception of Chapter 21 of the 2022 Regular Session)