No. 22-55024

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

Jarron Edmond,
*Plaintiff/Appellee,*

v.

Kurt Lockwood,
*Defendant/Appellant.*

On Appeal from the United States District Court
Central District of California No. 2:20-cv-06636-MCS-KS
The Honorable Mark C. Scarsi

## APPELLANT'S REPLY BRIEF

Janine K. Jeffery, Esq. (CSB # 112639)
*Jjeffery@reilyjeffery.com*
REILY & JEFFERY, INC.
5850 Canoga Avenue, Suite 400
Woodland Hills, California 91367
Tel. (818) 350-6282
Fax (818) 350-6283
*Attorneys for Defendant and Appellant Kurt Lockwood*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT.......................................................................................................3

   A. Edmond's "Facts" are Misleading....................................................3

   B. The Totality of The Circumstances Compel a Finding that Officer Lockwood Did Not Violate Edmond's Fourth Amendment Rights...................................5

   C. Edmond Failed to Meet His Burdern to Prove that Officer Lockwood Viloated Clearly Established Law................................................................. 7

CONCLUSION...................................................................................................14

CERTIFICATE OF COMPLIANCE.......................................................................15

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)......................................................................................5, 7

*Blanford v. Sacramento County*,
  406 F.3d 1110 (9th Cir. 2005) .................................................................. 13, 14

*Caroll v. Carman*,
  574 U.S. 13 (2014)..........................................................................................10

*Centeno v. City of Fresno*,
  740 F. App'x. 597 (9th Cir. 2018) .................................................................10

*Curnow v. Ridgecrest Police*,
  952 F.2d 321 (9th Cir. 1991) .......................................................................7, 8

*Easley v. City of Riverside,*
  890 F.3d 851 (9th Cir. 2018), reverse on other grounds
  *en banc*, 765 F. App'x. 282 (9th Cir. 2019) .........................................................11

*Estate of Lopez v. Gelhaus*,
  871 F.3d 998 (9th Cir. 1997) ...........................................................................8

*George v. Morris,*
  736 F.3d 829 (9th Cir. 2013) ...........................................................................8

*Gonzalez v. City of Los Angeles*,
  2017 U.S. Dist. LEXIS 224067 (C.D. Cal. 2017) ......................................... 9, 10

*Graham v. Connor*,
  490 U.S. 386 (1989)......................................................................................1, 5

*Harris v. Roderick,*
  126 F.3d 1189 (9th Cir. 1997) .........................................................................9

*Heck v. Humphrey*,
  512 U.S. 477 (1994).........................................................................................4

*Hughes v. Kisela*,
  841 F.3d 1081 (9th Cir. 2016) .........................................................................8

*Kisela v. Hughes*,
　138 S.Ct. 1148 (2018) ............................................................................... *passim*

*Malley v. Briggs*,
　475 U.S. 335 (1986) .......................................................................................2

*Marsh v. County of San Diego*,
　680 F.3d 1148 (9th Cir. 2012) .....................................................................10

*Menjivar v. City of Los Angeles*,
　2007 U.S. Dist. LEXIS 95928 (C.D. Cal. 2007) ...................................... 9, 10

*Pelayo v. City of Downey*,
　570 F.Supp.2d 1183, 1187-1190 (C.D. Cal. 2008) ......................................10

*Plumhoff v. Rickard,*
　572 U.S. 765 (2014) .......................................................................................4

*Reichle v. Howards*,
　566 U.S. 658 (2012) .....................................................................................10

*Rivas-Villegas v. Cortesluna,*
　142 S.Ct. 4 (2021) ..........................................................................................9

*Scheuer v. Rhodes*,
　416 U.S. 232 (1974) .......................................................................................2

*United States v. Wilmer,*
　799 F.2d 495 (9th Cir. 1986) .........................................................................3

*Wilson v. Layne,*
　526 U.S. 603 (1999) .....................................................................................10

## **Rules**

*FRAP, 9th Circuit,*
　　　Rule 28-2.8  6……………………………………………………………. 3

# INTRODUCTION

The District Court's denial of qualified immunity should be reversed because the undisputed incident facts, even when considered in the light most favorable to Edmond, show that there was no violation of a constitutional right, and no violation of a right that was clearly established at the time of the incident.

It is nighttime. The officers are in a park frequented by Rollin' Hills 40 gang members. As soon as the officers enter the park, a man quickly leaves. When the officers call out, the man immediately grabs his left pocket and runs into a poorly lit area of a nearby apartment complex. Both officers believe that he has a gun. They give chase. One officer yells at the suspect to get on the ground. He warns the suspect that he will be shot him if he does not get on the ground. The suspect continues to flee. The officer yells for the suspect to put his hands up. The suspect puts his hands up for a moment but then puts them down again. In the poorly lit area, the officer believes that he sees the suspect make a turning motion in his direction. And in that moment, with only a split second to make a decision that could cost him his life, the officer has to determine whether the suspect intends to shoot him. If the officer decides not to fire and is wrong, he could be killed.

This is exactly the type of situation in which qualified immunity is supposed to apply, i.e., to protect all but the plainly incompetent or those who *knowingly* violate the law from liability for decisions made in dangerous, tense, rapidly evolving situations – just like the one facing Officer Lockwood. *Graham v.*

1

*Connor*, 490 U.S. 386, 396 (1989); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Indeed, even if Officer Lockwood was mistaken in the belief that Edmond was turning toward him to shoot, qualified immunity should protect him from suit. That is, the situation facing Officer Lockwood unfolded rapidly and he had just a split-second to determine whether his life was in danger. If qualified immunity is not available in this type of situation, police officers will be inhibited in doing their jobs. *Scheuer v. Rhodes*, 416 U.S. 232, 240-241 (1974). They will likely opt to let armed suspects flee thereby undermining public safety rather than be forced to choose between being shot or risking personal liability for making a wrong decision.

    Moreover, contrary to Edmond's claim, at the time of the incident, Officer Lockwood's decision to shoot did not violate clearly established constitutional rights. It was Edmond's burden to identify a Supreme Court case or possibly binding circuit precedent which put Officer Lockwood on notice that his actions were unconstitutional. In that regard, Edmond cites to cases that are easily distinguishable on their facts or are non-binding district court opinions. Qualified immunity in the context of the Fourth Amendment requires specificity, i.e., the existence of specific precedent which squarely governs the officer's actions. No such case has been identified and as such, Officer Lockwood is entitled to qualified immunity.

# ARGUMENT

### A.  Edmond's "Facts" are Misleading

Edmond's answering brief contains facts that are contrary to judicial admissions, constitute misstatements, and/or are irrelevant to the issues before the court.

In the answering brief, Edmond claims that the first bullet hit Edmond's right hand.  This claim must be disregarded.  First, it is contrary to the judicial admission made by Edmond's counsel during oral argument on the motion for summary judgment:  "I don't believe that based on the state of the evidentiary record anyone would be able to know which of the four [shots] actually struck him and at what point."  (ER 15 at lines 8-14).  *United States v. Wilmer,* 799 F.2d 495, 502 (9th Cir. 1986) (representation at oral argument is judicial admission). Edmond has not provided any justification for disregarding this admission. Second, Edmond's claim that the first bullet hit him in the hand is not supported by any reference to the record.  (AB, 5)  This is in violation of FRAP, 9th Circuit, Rule 28-2.8 and constitutes an independent reason for disregarding this newly minted claim.

In the answering brief, Edmond focuses on his claim that he was not involved in illegal activity before the foot pursuit.  (AB, 21-22)  But as demonstrated in the opening brief, Edmond pled nolo contendere to a felony

charge of being a felon in possession of a firearm. (ER 162-165) This plea precludes Edmond from arguing that Officer Lockwood lacked probable cause to arrest him. That is, if Edmond had been arrested without probable cause, the gun conviction would be invalidated. Such a result is precluded by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Moreover, in oral argument Edmond conceded that there is no allegation that the officers had no right to stop the defendant. (ER 10:1-5)

Edmond also highlights facts which are irrelevant to the qualified immunity issue. For example, since Edmond's counsel has admitted that there is no evidence as to which shots struck Edmond, whether Edmond was falling when Officer Lockwood fired his third and fourth shots is irrelevant. Without this evidence, it is equally irrelevant whether Officer Lockwood "was certain" that Edmond was still holding the gun when Officer Lockwood fired his third and fourth shots. Furthermore, as the Supreme Court recognized in *Plumhoff v. Rickard,* 572 U.S. 765, 777 (2014), if officers are justified in using deadly force, they need not stop shooting until the threat has stopped.

Edmond has also misrepresented other facts. That is, Edmond claims that he had his hands raised during the pursuit pursuant to Officer Lockwood's commands. (AB, p. 21) Yet, the video itself and the screen shots taken from the video by Edmond demonstrate that Edmond did not keep his hands raised during the chase

4

and indeed, at the time he was shot, did not have his hands raised at all. (See Appellee's Exhibits 3, 4, 5, 11-17.) Edmond also asserts that Lockwood was issuing "angry, profanity laced commands." (AB, 21) Yet, in the commands that Officer Lockwood gave, he used one profanity. (ER 122) Edmond's claims that the orders were "angry" or "agitated" are without any factual basis. Moreover, those claims are irrelevant given that the reasonableness inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396 (1989). *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (If the circumstances, viewed objectively, justified the challenged action, the conduct was reasonable no matter the subjective intent of the officers.). Edmond likewise asserts that Officer Lockwood stated "I'm gonna shoot you." (AB, 21) But Officer Lockwood actually warned Edmond, stating: "Get on the ground *or* I'm gonna shoot you." At the time the warning was given, Officer Lockwood believed that Edmond had a weapon. (ER 105 at 13:5-8; ER 119 at 66:7-18; ER 121 at 77:6-16; ER 152)

### B. The Totality of The Circumstances Compel a Finding that Officer Lockwood Did Not Violate Edmond's Fourth Amendment Rights

It is undisputed that Officer Lockwood faced a tense, rapidly evolving situation that was fraught with danger to himself, his partner, and anyone who may

5

have had the misfortune of being in the apartment complex. The law is clear that Officer Lockwood did not need to see the muzzle of a weapon before he fired – as it would then be too late. And yet, that seems to be Edmond's argument even though Edmond could have simply put his hands up, stopped running, and avoided the entire incident.

When Edmond's claimed factual disputes are analyzed in light of his attorneys' judicial admissions and Edmond's plea to the criminal charge of being a felon in possession of a weapon, it is clear that the only real dispute is whether Edmond was turning toward Officer Lockwood with a gun in his hand when Officer Lockwood fired his weapon. Edmond claims the video does not show any turning motion. Officer Lockwood contends that it does. And yet, if this Court accepts that both interpretations are reasonable in the cold light of day and after the opportunity to play and replay the video evidence, isn't the doctrine of qualified immunity supposed to give the benefit of the doubt to Officer Lockwood who was forced to make his decision in real-time with his safety and the safety of others at risk? Moreover, the doctrine of qualified immunity is intended to encourage officers to do their jobs with vigor. If personal liability and all the attendant consequences thereof can attach to an officer for misinterpreting a suspect's movement under the circumstances facing Officer Lockwood, then officers'

abilities to do their jobs will be undermined and the safety of the public endangered.

### C. Edmond Failed to Meet His Burden to Prove that Officer Lockwood Clearly Established Law

Edmond failed to meet his burden to identify a case that put Officer Lockwood on notice that his "specific conduct was unlawful" and that the unconstitutionality of his conduct was "beyond debate." *Al-Kidd*, *supra*, 563 U.S. at 741. In a Fourth Amendment analysis, existing precedent must "squarely govern" the specific facts at issue. *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018). To meet this standard, Edmond was required to submit a Supreme Court case, or arguably one or more Ninth Circuit cases, that contain, at the very least, the following facts: 1) a police chase of a fleeing suspect; 2) probable cause to believe the suspect is armed with a gun; 3) poor light or visibility; 4) a suspect fleeing toward an inhabited area; 5) a suspect failing to comply with the officer's commands; 6) a warning; and 7) a rapidly unfolding incident.

Because "… police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue," it is clear that Edmond's cases do not establish the necessary precedent. *Kisela v. Hughes, supra*, 138 S.Ct. at 1152. In that regard, Edmond cites *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991), where the Court denied qualified immunity. The facts of *Curnow*, however, are distinguishable. Curnow was not fleeing at the point at

7

which he was shot. Curnow was in his own home. He was not given an opportunity to drop his weapon. No warnings were given before he was shot. He did not fail to comply with any commands. It was not dark. And, unlike this case where the entire chase lasted no more than ten seconds, the Curnow incident involved extensive planning by the officers of the most efficacious way to confront Curnow. *Id.* at 323.

Edmund also relies on *Estate of Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 1997) ("*Gelhaus*"), which is equally unhelpful. There was no foot pursuit in *Gelhaus*. The incident in *Gelhaus* occurred in the middle of the day, a fact highlighted several times by the appellate court. (*Id*. at 1001, 1002) In *Gelhaus,* the suspect was standing next to an open field, rather than running into a poorly lit apartment complex. (*Id*. at 1003-1004) Furthermore, the shooting officer in *Gelhaus* "indisputably had time to issue a warning, but never notified Andy that he would be fired upon if he either turned or failed to drop the gun." (*Id.* at 1011.)

Edmond has quoted a lengthy passage from *Gelhaus* to support his position but the cases cited therein do not support his argument. For example, the *Gelhaus* Court cited *George v. Morris,* 736 F.3d 829 (9th Cir. 2013). In that case, the decedent was a 64-year-old homeowner using his walker on his own patio – not a fleeing suspect. The *Gelhaus* court also cited the Ninth Circuit's decision in *Hughes v. Kisela*, 841 F.3d 1081, 1085-1087 (9th Cir. 2016). The Supreme Court,

8

however, reversed that decision, finding that the officer in *Kisela* was, in fact, entitled to qualified immunity. *Kisela v. Hughes, supra*, 138 S.Ct. at 1148. See discussion *infra*.

Edmond also cites *Harris v. Roderick,* 126 F.3d 1189, 1204 (9th Cir. 1997), to support his claim that Officer Lockwood violated clearly established law. The *Harris* case involved a sniper positioned safely on a hilltop who shot a man in the back while the man was retreating to a cabin during the Ruby Ridge standoff. The *Kisela* Court found that the attempted comparison between the facts in *Kisela* (a woman holding a knife near a bystander) and the facts in *Harris* "does not pass the straight-face test." 138 S.Ct. at 1154. The comparison does not pass the "straight-face test" here either as Officer Lockwood was not in a position of safety and Edmond was running into an inhabited apartment complex.

Edmond also continues to insist that *Gonzalez v. City of Los Angeles*, 2017 U.S. Dist. LEXIS 224067 (C.D. Cal. 2017), and *Menjivar v. City of Los Angeles*, 2007 U.S. Dist. LEXIS 95928 (C.D. Cal. 2007), constitute established precedent for purposes of qualified immunity. They do not. Contrary to Edmond's claims, they are not published decisions. Moreover, they are both district court opinions which do not establish constitutional standards. Indeed, in *Rivas-Villegas v. Cortesluna,* 142 S.Ct. 4, 7 (2021), the Supreme Court repeated its earlier statement that even "controlling Circuit precedent" may not clearly establish "law for

purposes of § 1983." *See Caroll v. Carman*, 574 U.S. 13, 17 (2014) ("Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances…."); *Reichle v. Howards*, 566 U.S. 658, 665-66 (2012) ("Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law in the circumstances of this case. . . ."); *Wilson v. Layne,* 526 U.S. 603, 616 (1999) (finding no clearly established law where the only cases cited were a state intermediate court decision and two unpublished district court decisions). *See also, Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (holding that "the opinions by a federal district court and an intermediate state court are insufficient to create a clearly established right"). These decisions preclude, *Gonzalez* and *Menjivar* from being treated as "clearly stablished law".[1]

---

[1] Indeed, if unpublished decisions or decisions from the district court are sufficient to establish precedent for purposes of qualified immunity, the decision to grant Officer Lockwood qualified immunity is an even easier one. For example, in *Pelayo v. City of Downey*, 570 F.Supp.2d 1183, 1187-1190, 1201-1205 (C.D. Cal. 2008), a suspicious driver led officers on a foot chase, ignored orders to surrender, and thereafter raised his hands holding an object the officers thought was a gun (even though it was a car key). An officer fired his weapon believing that the suspect was pointing a gun at him. Yet, the officer was found to be immune. Other facts in *Pelayo* in common with this case include that the building was not fully illuminated and the shooting part of the incident "took place in a matter of seconds." *Id.* at 1204. Similarly, in *Centeno v. City of Fresno*, 740 F. App'x. 597, 598-599 (9th Cir. 2018), qualified immunity was found where officers as here, "reasonably believed that the suspect was armed." *Id.* at 598. Also, as here, the suspect refused to comply with orders. *Id.* Then, while facing the officers, the suspect pulled a small black object from his shorts pocket—where the caller had

The fact is that none of the decisions cited by Edmond provide the necessary factual specificity to have provided notice to Officer Lockwood that his actions were unconstitutional. As such, Edmond has failed to meet his burden and Officer Lockwood should have been granted qualified immunity.

In the opening brief, counsel for Officer Lockwood mistakenly relied upon *Easley v. City of Riverside,* 890 F.3d 851 (9th Cir. 2018), rev'd. on other grounds on hearing *en banc*, 765 F. App'x. 282 (9th Cir. 2019). In *Easley*, the Ninth Circuit, in an unpublished opinion, reversed the finding of qualified immunity on the ground that the district court held a *sua sponte* evidentiary hearing which required credibility determinations. Based on this *en banc* decision, Officer Lockwood's counsel apologizes to the court and withdraws her request that the *Easley* case be relied on as precedent.

A reasonable officer in Officer Lockwood's position, however, could have relied on the *Kisela* Court's analysis in 2018 to conclude that his conduct was lawful – even if he was mistaken in his belief as to Edmond's threatening movement at the time Officer Lockwood fired. In *Kisela*, the Supreme Court reversed the Ninth Circuit's decision denying qualified immunity on an excessive

---

stated that he was carrying his weapon – which the officers believed was a handgun. *Id*. There was no evidence that the suspect actually pointed the object at the officer and yet, the officer who fired his weapon was still protected by qualified immunity.

force claim after the officer shot an individual armed with a large knife.  The police had responded to a 911 call of a woman acting erratically and hacking at a tree with a kitchen knife.  When officers arrived, the woman emerged from the house carrying the large knife at her side.  The suspect walked toward a bystander (who turned out to be the suspect's roommate) while holding the knife to her side, stopping no more than six feet away.  *Id.*  Despite the officers' announced presence, drawn weapons, and commands to drop the knife, the woman continued to hold the knife.  Fearing for the bystander's safety, one officer fired four shots, striking the suspect.

    The Supreme Court found the officer was entitled to qualified immunity even though the suspect had not made any threats or threatening gestures and the bystander later testified that she did not feel endangered.  (*Id*. at 1151.)  In coming to its decision, the Court emphasized the following facts:  1) "Kisela had mere seconds to assess the potential danger to [the bystander];" 2) the suspect was armed with a large knife; 3) the suspect ignored the officers' orders to drop the weapon; and 4) the suspect was within striking distance of the bystander.  *Id.* at 1153, 1154.  Officer Lockwood was presented with the same circumstances in this case.  Moreover, *Kisela* did not involve a foot pursuit, a gun, darkness, or any reasonable belief by the officers that the suspect had committed a crime.  Based on the *Kisela* decision, a reasonable official in Officer Lockwood's position could well have

concluded that his conduct was reasonable – even if Officer Lockwood was mistaken in his belief that Edmond's movement constituted a threat.

In reaching its decision in *Kisela*, the Supreme Court found that *Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir. 2005), was the most analogous Ninth Circuit precedent and that it favored a finding of immunity. The *Kisela* Court described the Blandford decision as follows:

> In *Blanford*, the police responded to a report that a man was walking through a residential neighborhood carrying a sword and acting in an erratic manner. Id., at 1112. There, as here, the police shot the man after he refused their commands to drop his weapon (there, as here, the man might not have heard the commands.) Id., at 1113. There, as here, the police believed (perhaps mistakenly), that the man posed an immediate threat to others. Ibid. There, the Court of Appeals determined that the use of deadly force did not violate the Fourth Amendment. Id., at 1119. Based on that decision, a reasonable officer could have believed the same thing was true in the instant case. *Kisela*, 138 S.Ct. at 1153-1154.

These same circumstances faced Officer Lockwood. The police responded to the suspicious actions of Edmond, having cause to believe that he had a weapon. As in *Kisela and Blanford*, Edmond refused to obey the commands to get down and show his hands. As in *Kisela a*nd *Blanford*, Officer Lockwood believed (perhaps mistakenly) that Edmond posed an immediate threat. As in *Kisela* and *Blanford*, the entire event unfolded quickly. See *Kisela* at 1153 ("Kisela had mere seconds to assess the danger"); *Blanford,* 406 F.3d at 1114 ("the entire encounter lasted about

13

two minutes.") As importantly, unlike the suspects in *Kisela* and *Blanford,* Edmond was fleeing into an unlit apartment complex at night with a gun.

Edmond's failure to meet his burden of proving that Officer Lockwood's conduct was governed by clearly established law compels reversal of the District Court's order denying qualified immunity.

## CONCLUSION

Officer Lockwood's motion for summary judgment should have been granted on the ground that he did not violate Edmond's Fourth Amendment rights and on the further ground that the law was not clearly established at the time of the incident.

Dated: November 7, 2022    REILY & JEFFERY, INC.


*/s/ Janine K. Jeffery*
Janine K. Jeffery
*Attorney for Appellant Kurt Lockwood*

## CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party.

**This brief contains 3,464 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.


Dated: November 7, 2022				REILY & JEFFERY, INC.


						/s/ Janine K. Jeffery
						Janine K. Jeffery
						*Attorney for Appellant Kurt Lockwood*